SLOVAK, BARON, EMPEY, MURPHY & PINKNEY LLP
Shaun M. Murphy, Esq. (CASB# 194965)
Katelyn K. Empey, Esq. (CASB# 292110)
1800 East Tahquitz Canyon Way
Palm Springs, California 92262
Telephone: (760) 322-2275
Fax:      (760) 322-2107

*In Association with:*
MILES KOWALSKI, Deputy County Counsel (CASB# 257269)
JEAN-RENE BASLE, County Counsel (CASB# 134107)
385 North Arrowhead Avenue, 4th Floor
San Bernardino, CA 92415-0140
Telephone: (909) 387-5455
Fax:      (909) 387-3070
E-mail:   Miles.Kowalski@cc.sbcounty.gov

Attorneys for Defendants, JOHN McMAHON & RONALD SINDELAR

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEMEHUEVI INDIAN TRIBE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN McMAHON, et al. <br><br> Defendants. | Case No. 5:15-CV-01538-DMG (FFM) <br> [Case Assigned to: Hon. Dolly M. Gee, Courtroom 8C] <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]** <br><br> Date:      June 30, 2017 <br> Time:      2:00 p.m. <br> Location:  350 W. 1st St. <br>            Los Angeles, CA 90012 <br>            Courtroom 8C |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................... 1

II. LEGAL ARGUMENT .............................................................................. 2

    A. The 1907 Order did not create the Reservation or establish its boundaries ........................................................................................... 2

    B. The Secretary did not have authority to include Section 36 within the boundaries of the Reservation ...................................................... 5

    C. That Section 36 is bordered by Bureau of Reclamation Land is relevant to, and further establishes that, Section 36 is not "Indian Country" ............................................................................................... 8

    D. Section 36 is not a dependent Indian community ............................... 9

    E. The Statutes are unambiguous and need not be interpreted in the Tribe's favor ............................................................................ 10

    F. Plaintiffs have not produced evidence sufficient to create a genuine issue of material fact regarding its racial profiling claims ..... 11

III. CONCLUSION ....................................................................................... 12

CERTIFICATE OF SERVICE ....................................................................... 13

i

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska v. Native Village of Venetie Tribal Gov't,*
   522 U.S. 520 (1998) .................................................................................. 9

*Arizona v. California,*
   373 U.S. 546 (1963) .................................................................................. 4

*Chemehuevi Indian Tribe v. California State Bd. Of Equalization,*
   757 F.2d 1047 (1985) ............................................................................... 5

*DeCoteau v. District County Court,*
   420 U.S. 425 (1975) .................................................................................. 8

*Donnelly v. United States,*
   228 U.S. 243 (1913) .................................................................................. 3

*Georgia v. Evans,*
   316 U.S. 159 (1942) ............................................................................... 5, 6

*High Tech Gays v. Defense Indus. Sec. Clearance Office,*
   895 F.2d 563 (9th Cir. 1990) .................................................................. 12

*Minnesota v. Hitchcock,*
   185 U.S. 373 (1902) .................................................................................. 3

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
   210 F.3d 1099 (9t Cir. 2000) .................................................................. 12

*Pechanga Band of Mission Indians v. Kacor Realty, Inc.*
   680 F.2d 71 (9th Cir. 1982) ............................................................. 2, 4, 5

*United States v. Cooper,*
   312 U.S. 600 (1941) ............................................................................... 5, 6

ii

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

*United States v. Pelican*,
   232 U.S. 442 (1914).................................................................................... 3

*United States v. Ron Jorgensen*,
   USDC, Central District of California, Case No. CV-92-3809-TJH ........... 4

*United States v. Southern Pacific Transp. Co.*,
   601 F.2d 1059 (9th Cir. 1979) ..................................................................... 7

**Statutes**

18 U.S.C § 1151(b) ............................................................................... 1, 9, 10

32 Cong., Ch. 145, Sec. 6................................................................................ 6, 7

iii

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT;
OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

## I. INTRODUCTION

Plaintiffs raise five arguments in opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (***"Motion"***) on the issue of Section 36:

(1) The 1907 Order established the boundaries of the Reservation;

(2) The Secretary had the authority to include Section 36 within the boundaries of the Reservation;

(3) Whether Section 36 borders federal Bureau of Reclamation land, is irrelevant to the Indian Country analysis;

(4) Section 36 is Indian Country because it qualifies as a dependent Indian community under 18 U.S.C § 1151(b); and

(5) The applicable statutes must be interpreted in Plaintiffs' favor (*see* Doc # 64, page 6 of 28, lines 18-28, page 7 of 28, line 1 (Opposition, 1:18-28, 2:1).)

Regarding Defendants' Motion on the racial profiling claim, Plaintiffs conclude, without evidentiary support, that there is a genuine dispute of material fact. (*Id.*, page 7 of 28, lines 1-3 (Opposition, 2:1-3).)

Plaintiffs' arguments in opposition to the Section 36 issue do not defeat Defendants' right to judgment primarily because they incorrectly conclude that the Secretary could include land conveyed to the State of California within the boundaries of a newly-created reservation.

On the racial profiling claim, Plaintiffs' evidence does not rise to a disputed issue of material fact. Accordingly, the Court should grant Defendants' Motion.

///

///

///

1

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

## II. LEGAL ARGUMENT

### A. The 1907 Order did not create the Reservation or establish its boundaries.

The parties agree that the Secretary's 1907 Order was subject to the provisions of MIRA and the Appropriations Act. The statutory language of MIRA and AMIRA unambiguously require a two-step process to create a reservation and define its boundaries.[1] The Secretary is required to select and set aside the designated land, ***and*** issue a trust patent. (*See, e.g., Pechanga Band of Mission Indians v. Kacor Realty, Inc.* (680 F.2d 71, 75 (9th Cir. 1982)), holding "…the Secretary had to issue a patent to the land [under the MIRA] in order to include it in the reservation.")

There is no dispute that both of those steps did not take place in 1907. The Secretary purported to set aside land, but he did not issue or cause to be issued the statutorily required trust patent. The essence of Plaintiffs' Opposition to this point is that it does not matter that the Secretary failed to carry out the statutory requirements for establishing the reservation.

Plaintiffs contend that the plain language of the relevant statutes and the cases interpreting those statutes rebut the Defendants' position. But Plaintiffs do not cite to any conflicting or contradictory statutory language. The applicable statutory language of MIRA states, "That the commissioners, upon the completion of their duties, shall report the result to the Secretary of the Interior, who, if no valid objection exists, ***shall cause a patent to issue for each of the reservations*** selected by the commission and approved by him in favor of each band or village of Indians occupying any such reservation, ***which patents shall be of the legal effect, and declare that the United States does and will hold the land***

---

[1] To the extent that Plaintiffs rely on cases involving the establishment of reservations by treaty or executive action, they are inapplicable. There are several means by which a reservation may be set aside, but when Congress establishes a procedure, its requirements must be followed.

2

*thus patented,…*" By expressly stating that the patents shall have the legal effect of declaring the United States' holding of the land in trust, means that the absence of a patent does not create the legal effect provided in the statute. Otherwise, the language is superfluous and meaningless. Contrary to Plaintiffs' contention, the plain language of the statute does not rebut Defendants' position.

Furthermore, the express language of the 1907 Order does not support Plaintiffs' contention. The 1907 Order states that certain lands were withdrawn *until further notice*. The 1907 Order makes the land designation *contingent on the passage of legislation by Congress*. The "until further notice" reference suggests that lands may be added or withdrawn until final approval, but no further action was taken by the Secretary.

Plaintiffs further contend that Defendants' claim is rebutted by the cases "interpreting those statutes." However, none of the cases Plaintiffs cite immediately thereafter that statement involved the creation of reservations under the Mission Indian Relief Act. For example, *Minnesota v. Hitchcock*, 185 U.S. 373, 390 (1902), involved the creation of a reservation by treaty with the United States; *Donnelly v. United States*, 228 U.S. 243 (1913), addressed whether a white man was subject to federal court jurisdiction for the murder of an Indian on reservation land. Furthermore, the reservation in question was created by executive order in accordance with Congressional authorization (not MIRA). And *United States v. Pelican*, 232 U.S. 442, 449 (1914), another case involving federal jurisdiction over a murder charge on Indian land, considered whether allotments that were originally within the boundaries of a properly established reservation retained their character as "Indian Country." As with the other cases Plaintiffs cite, the reservation at issue was not created under or subject to the provisions of MIRA.

Thus, nothing in the statute rebuts Defendants' position that a trust patent was required to establish the boundaries of the reservation. Plaintiffs next cite to

3

instances where the federal government or courts have referred to or acknowledged the Reservation. None of these examples addressed the specific issue presented in this case.

For example, *Arizona v. California*, (1963) 373 U.S. 546, was an original action in the Supreme Court with Arizona challenging the establishment of water rights in the Colorado River. The Chemehuevi Tribe was a not a party to the litigation nor were the specific boundaries of its reservation at issue. Instead, the block quote Plaintiffs' included in their Opposition addressed Arizona's challenge to the created water rights. Arizona argued that after it became a state, water rights could not be reserved by executive order. It challenged the reservation of water rights in certain tribes, among others, along the Colorado River. The court refused to hear the challenge to the reservation of water rights simply because they were created by executive order. The court's reference to the Chemehuevi Reservation recognized that it was subject to congressional approval, which never came, as AMIRA required a trust patent, which was not issued.

Plaintiffs' citation to *United States v. Ron Jorgensen,* United States District Court, Central District of California, Case No. CV-92-3809-TJH is misplaced. The Plaintiffs' citation to a statement of allegedly uncontroverted facts filed in a district court action has no application in this case under doctrines of issue preclusion or res judicata. Moreover, that others have incorrectly concluded or assumed that the 1907 Order validly included Section 36 within the boundaries of the Reservation, does not establish that the Reservation was properly established under MIRA or that Section 36 is a part thereof.

Finally, Plaintiffs' attempt to distinguish *Pechanga* fails. Plaintiffs explain that the land in dispute in that case was not included in the original trust patent because of an ownership dispute with an individual. The Tribe subsequently claimed ownership over the land, but the court held that it was not Tribal land because it was not included in the Trust patent. Here, ownership of Section 36 is

4

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]
(Case No. 5:15-cv-01538-DMG-FFM)

equally disputed. Because it was not included in the 2010 Trust Deed, it is not part of the Reservation for the reasons express by the court in *Pechanga*.

### B. The Secretary did not have authority to include Section 36 within the boundaries of the Reservation.

Plaintiffs make two arguments in opposition on this issue, neither of which is persuasive. First, relying entirely on *United States v. Cooper*, 312 U.S. 600 (1941) (federal government not entitled to treble damages under the Sherman Act because it was not a "person" under the statute), Plaintiffs contend that the State of California is not a "person" within the meaning of Section 3 of MIRA. Plaintiffs' reliance on *Cooper* is misplaced.

A year after the Supreme Court decided *Cooper*, it limited its holding in *Georgia v. Evans*, 316 U.S. 159, 162 (1942), holding that a State is a "person" within the meaning of the Sherman Act. The Court explained that *Cooper* did not recognize a hard and fast rule that a governmental agency may never be a "person." The determination depends on "the purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law." *Georgia v. Evans*, 316 U.S. at 161.

Considering those factors led the court to conclude that the State of Georgia was a "person" under the Sherman Act whereas the federal government was not. The State of Georgia, unlike the United States, could not prosecute violations of the Sherman Act. It similarly could not seize property transported in violation of the Act and an amendment was required to allow anyone other than the United States to obtain injunctive relief. *Id.* at 162. If a State is not recognized as a "person" it would be without redress for injuries caused by practices in violation of the law. *See also Chemehuevi Indian Tribe v. California State Bd. Of Equalization* (1985) 757 F.2d 1047, 1054-1055 (finding that the Tribe was a

"person" under the California Cigarette Tax Law rejecting its reliance on *United States v. Cooper*, 312 U.S. 600 (1941)).

Considering "the purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute [as] aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law," leads to the conclusion that the State of California is a "person" under Section 3 of the Mission Indian Relief Act. Section 3 must be read in context with the Act of 1853 (32 Cong., Ch. 145, Sec. 6) wherein the federal government conveyed to California sections sixteen and thirty-six in each township in the state. The purpose of the act was to withdraw those sections from "public lands" subject to preemptive rights and to give them to the State.

There is nothing in the ensuring history to suggest that congress intended to alter the conveyance of sections sixteen and thirty-six to the State. In reviewing MIRA, it did not intend for the creation of reservations on lands privately held. To illustrate, section 2 instructs commissioners identifying reservation land to determine whether there are vacant public lands available to remove Indians occupying lands within the limits of confirmed private grants. Clearly, congress did not intend to disturb existing land rights in the establishment of reservations.

The reference to "person" in MIRA does not suggest that it was limited only to natural persons. As in *Georgia v. Evans,* to interpret "person" to exclude the State would leave the State without a remedy. Adopting Plaintiffs' interpretation would allow the federal government to rescind decades old conveyances disrupting settled property rights. Clearly, the use of the word "person" in section 3 of MIRA includes the State.

Second, Plaintiffs contend the Act of 1853 had the effect of preventing Section 36 from becoming "land in public domain" because it excluded from its application land occupied by Indians. (Doc # 64, page 15 of 28, lines 9-12 (Opposition, 10:9-12.) Plaintiffs therefore conclude that the exemption in Section

6

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

3 of the MIRA does not apply. (Doc #64, page 15 of 28, lines 12-13 (Opposition, 10:12-13).)[2]

As previously shown, whether the exception in Section 3 of MIRA applies is immaterial because the Secretary had no authority, under MIRA or any other law, to include land previously ceded to the State within the Reservation. Nevertheless, Plaintiffs' interpretation of the exception in Section 3 is incorrect.

Plaintiffs' error is apparent from the face of the Act of March 3, 1853, Section 6: "That all the public lands in the State of California, whether surveyed or unsurveyed, with the exception of sections sixteen and thirty-six, which shall be and hereby are granted to the State for the purposes of public schools in each township, …" (32 Cong., Ch. 145, Sec. 6). Plaintiffs contend that this language had the effect of preventing Section 36 from becoming land in the public domain. Plaintiffs' interpretation is wrong. The reference to "all public lands in the State of California" included sections sixteen and thirty-six. However, with respect to those public lands, the federal government granted them to the State of California, thus they were not subject to preemption rights. If those sections were not public lands, the federal government would have had no authority to convey them to the State of California.

The federal government conveyed Section 36 to the State in 1853, and the section was surveyed in 1895. The Ninth Circuit's decision in *United States v. Southern Pacific Transp. Co.* 601 F.2d 1059, 1067 (9th Cir. 1979) held that conveyances under the Act of March 3, 1853, vest upon survey at which time Congress loses its power of disposition over such property. Plaintiffs did not even cite this case let alone attempt to distinguish it. Consequently, as of 1895 when Section 36 was surveyed, it belonged to the State of California and was no longer

---

[2] Although not stated in their Opposition, Plaintiffs suggest (and expressly argue in their Motion for Partial Summary Judgment) that the Section 36 at issue in this case was not granted to the State by the 1853 Act because it was occupied by the Tribe. Despite having no evidence to support this conclusion, this conclusion is based on the same misunderstanding of the statutes as discussed below.

7

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

subject to the power of disposition and could not have been included within the Reservation.

### C. That Section 36 is bordered by Bureau of Reclamation Land is relevant to, and further establishes that, Section 36 is not "Indian Country".

Plaintiffs contend that the undisputed fact that Section 36 is not landlocked by the Reservation is irrelevant to whether Section 36 is "Indian Country." Defendants' did not grab the argument "out of thin air," but address one of the principle bases of the Court's Ruling on the Motion for Preliminary Injunction. In preliminarily finding that Section 36 was "Indian Country," the Court held that "[a]s applied here, Section 36 is a landlocked parcel surrounded on all sides by Chemehuevi Reservation land, a near-perfect example of the type of checkerboard jurisdiction the Supreme Court counseled against." (Doc # 51, page 13 of 16.) Yet, the undisputed facts establish that this is not the case.

That Section 36 is not landlocked by the Reservation, and thus not "Indian Country" under Section 1151, is supported by the plain language of the statute itself, which provides: "Indian County" means (a) all land <u>within the limits of any Indian reservation</u> under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not be extinguished, including rights-of-way running through the same. It cannot be seriously disputed that where Section 36 falls completely outside the exterior boundaries of the Reservation that it is not "within the limits" thereof.

This plain reading is bolstered by, but not dependent upon, the Supreme Court's holding *DeCoteau v. District County Court*, 420 U.S. 425, 427 fn. 2

8

(1975) in which it construed the phrase "within the limits" of the Reservation to mean "within a continuing 'reservation.'" Ironically, Plaintiffs cite to no authority that land which is not, and was never, part of a reservation, and which falls completely outside the boundaries thereof, would somehow be subject to the Tribe's jurisdiction.

Moreover, Plaintiffs position that a finding that Section 36 is "Indian Country" would avoid a pattern of checkboard jurisdiction ignores the purpose of Section 1151; namely, to avoid checkboard jurisdiction <u>within a Reservation</u>. Section 36 is not within a Reservation, as established. That the land south of Section 36 is subject to federal jurisdiction is no different than if it was subject to jurisdiction of another state, or even another country. For purposes of Section 1151, Section 36 is not "Indian Country" because it is not "within the limits of a continuous Reservation."

   D.   <u>Section 36 is not a dependent Indian community</u>.

Plaintiffs contend that even if the 1907 Order did not create the Reservation, that all of the lands in the 1907 Order, including Section 36, would be "Indian Country" because it qualifies as a "dependent Indian Community." However, Plaintiffs cannot seriously contend that Section 36, which was ceded to the State in 1895, and which is and has since been owned in fee by non-Indians is somehow a dependent Indian community under 18 U.S.C. 1151.

In *Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 523-533 (1998) on which Plaintiffs rely, the Supreme Court found the land in question, approximately 1.8 million areas owned in fee simple by the tribe, was <u>not</u> a dependent Indian Community.

There, the Court held that "Dependent Indian communities" refers to a limited category of Indian lands that are neither reservations nor allotments (the other categories of Indian country set forth in § 1151), and that satisfy two

9

requirements -- first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence. (*Id.* at 530.) As particularly relevant, the "federal set-aside requirement ensures that the land in question is occupied by an 'Indian community'; the federal superintendence requirement guarantees that the Indian community is sufficiently "dependent" on the Federal Government that the Federal Government and the Indians involved, rather than the States, are to exercise primary jurisdiction over the land in question." (*Id.* at 531.) As the land is predominately, if not completely, non-Indian, Section 36 does not meet this criteria.

Moreover, even if Section 36 was at some point dependent Indian community, it is certainly not now, and there is no language in Section 18 U.S. 1151 suggesting that land is "Indian Country" where it was, at some point in time, dependent Indian Community.

Nor are Plaintiffs' claims related to aboriginal title of Section 36 helpful. As explained above, no valid rights were set aside for the Tribe in the 1853 Act such that the State took Section 36 subject thereto.

### E. The Statutes are unambiguous and need not be interpreted in the Tribe's favor.

Finally, Plaintiffs contend that statutes passed for the benefits of Indian Tribes and communities are to be liberally construed in favor of the Indians, and any doubt as to the statutes proper construction is to be resolved in their favor. (Doc#64, page 21 of 28, lines 11-15 (Opposition, 16:11-15.) Although this may be true, it is irrelevant.

First, only where the statutes are subject to more than one interpretation should they be construed in favor of the Tribe. The express language of the statutes are unambiguous, and thus, this cannon of statutory construction does not apply.

10

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

Second, even if the statutes were ambiguous, the Preemption Act of 1841, the Act of March 3, 1853, were not passed for the benefit of Indian tribes. The Preemption Act of 1841 and the Act of March 3, 1853, apply principally to the disposition of public lands. The only mention of Indian tribes, namely that by extending federal preemption rights to public lands in California, it is not to "be construed to authorize any settlement to be made on any tract of land in the occupation or possession of any Indian tribe, or to grant any preemption right to the same."

As to the remaining statutes, even if construed in favor of the Tribe, it does not bring Section 36 within the definition of Indian Country, as the Secretary did not have authority, under even the broadest of interpretations, to include land within a Reservation that was not subject to his power disposition.

**F. Plaintiffs have not produced evidence sufficient to create a genuine issue of material fact regarding its racial profiling claims.**

Plaintiffs have not produced any admissible evidence whatsoever in support of their contention that the conduct of Deputy Sindelar was racially-motivated or that Defendants otherwise failed to have probable cause to stop and/or issue the citations in question. Plaintiffs conclude, without any factual support, that the conduct in question constitutes "racially-motivated discriminatory practices." However, all stops were made with probable cause, and all citations issued for legitimate vehicle code violations. Other than the conclusory allegation that the practices were racially motivated, Plaintiffs have presented no factual evidence supporting this proposition. Self-serving conclusions found in Plaintiffs' declarations are not evidence. (See Doc # 51, Court's August 16, 2016 Order, fn 15, holding Plaintiffs "written submissions are entirely devoid of any evidence that Defendants' actions were racially motivated.") Instead, Plaintiffs contentions are based wholly on the improper

11

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)

conclusion that Deputy Sindelar is exceeding the boundaries of his authority by improperly citing tribal members on land within the boundaries of the Reservation. However, because Section 36 is not within the boundaries of the Reservation, this conclusion fails, as does the claim based thereon.

Plaintiffs' contention that Defendants have not made the required showing on this claim is mistaken. In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense *or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.* (*Nissan Fire & Marine Ins. Co. v. Fritz Cos.* (9th Cir. 2000) 210 F.3d 1099, 1102.) Because Plaintiffs have not produced any evidence establishing an essential evidence of their case, Defendants have met this burden of production.

If the moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. (*Id.* citing *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir. 1990), emphasis added.) Because Plaintiffs have failed to do so, the motion for summary judgment should be granted.

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request the Court grant its Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

Date: June 16, 2017         **SLOVAK BARON EMPEY MURPHY & PINKNEY LLP**

By: */s/ Shaun M. Murphy*
    Shaun M. Murphy, Esq.
    Attorney for Defendants

12

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]
(Case No. 5:15-cv-01538-DMG-FFM)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 16, 2017, a true and correct copy of the foregoing DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56] was served on Plaintiffs in accordance with the Federal Rules of Civil Procedure.

By: */s/ Shaun M. Murphy*
Shaun M. Murphy

13

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**
(Case No. 5:15-cv-01538-DMG-FFM)